UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CLARENCE E. WESLEY, 1707 Benning Road NE Apt. D-24 Washington, DC 20002 | November 16, 2018 |
| Plaintiff, | |
| v. | Case no. 1:18-cv-2658 |
| GEORGETOWN UNIVERSITY University Counsel Office of General Counsel 202 Healey Hall Washington, DC 20057 | JURY TRIAL DEMANDED |
| Defendant. | |

# COMPLAINT FOR DAMAGES
# EMPLOYMENT DISCRIMINATION

1. Plaintiff Clarence Wesley brings this action against Defendant Georgetown University (hereinafter, "Georgetown") to recover compensatory damages and reasonable attorney's fees and costs for violations of the D.C. Human Rights Act of 1977 and Title VII of the Civil Rights Act of 1964, as amended.

## I. PARTIES AND JURISDICTION

2. Mr. Wesley is a citizen of the United States and resides in Washington, D.C. At all times relevant to this Complaint for Damages, Mr. Wesley was an employee of Georgetown.

3. Georgetown is a private university located in Washington, D.C., and is an employer as defined in 42 U.S.C. § 2000e(b).

4. This court has jurisdiction pursuant to 42 U.S.C. § 2000e. *See* Exhibit A.

5. Venue lies in this jurisdiction pursuant to 28 U.S.C. §1391.

## II. STATEMENT OF FACTS

6. Mr. Wesley began working at Georgetown in 2001.

7. Mr. Wesley has been with the Georgetown Facilities Department for almost eighteen (18) years and is a well respected member of the University community, with high praise for his work in the areas for which he is responsible. Numerous letters of support from members of the University community—including professors—will be provided to the court at the appropriate stage in the proceedings.

8. Mr. Wesley was a Building Maintenance Worker on the Academic Zone Team until approximately one (1) year ago, when he was moved to a "skill shop" to work as a plumber journeyman within the Facilities Department. He is still classified as a maintenance worker, and is paid the lower wage of a maintenance worker.

9. On January 27, 2014, Mark Sciarratta became the Director of Facilities Management.

10. On September 15, 2014, Pedro Alvarez became the leader for the Academic Zone Team.

11. Mr. Wesley is African American.

12. Mr. Sciarratta is Caucasian, and Mr. Alvarez is Hispanic.

13. After Mr. Alvarez became the leader, there was a breakdown in communication between management and employees. For example, only select employees were notified

about overtime opportunities through a direct phone call from Mr. Alvarez. This was a change from the prior practice of posting the opportunities publicly.

14.  Hispanic employees received calls from Mr. Alvarez with overtime opportunities, whereas Mr. Wesley and other black employees did not.

15.  On July 2, 2015, Mr. Wesley was accused by Mr. Sciarratta and Mr. Alvarez of stealing hours after Mr. Wesley worked three (3) hours of overtime for which he had pre-approval from Mr. Alvarez.

16.  Mr. Wesley frequently took advantage of opportunities to work overtime prior to 2014, estimating that he worked 16-32 hours of overtime per month. Once Mr. Sciarratta and Mr. Alvarez were in charge, he received notice of overtime opportunities much less frequently; and ultimately determined that working overtime was too risky given Mr. Sciarratta and Mr. Alvarez's ongoing harassment and attempts to find reasons to punish Mr. Wesley.

17.  Hispanic employees are also not subject to the same disciplinary measures as non-Hispanic employees.

18.  On July 21, 2015, Mr. Wesley filed a discrimination complaint based on race because of the preferential treatment of Hispanic employees regarding overtime and communication from management.

19.  On August 21, 2015, Mr. Wesley and a Hispanic co-worker, Mr. Hector Coreas, equally engaged in an argument.

20. On September 16, 2015, Mr. Wesley was put on paid administrative leave pending investigation for the argument, and received a disciplinary warning. Mr. Coreas received no punishment.

21. Mr. Sciarratta was the management official responsible for the investigation and discipline relating to this matter.

22. This incident was relayed to the Equal Employment Opportunity Commission (EEOC), and included with Mr. Wesley's original complaint as a retaliation claim.

23. The EEOC found that Mr. Coreas initiated the argument, and that Georgetown violated Title VII by disciplining Mr. Wesley due to his race and in retaliation for engaging in protected activity.  *See* Exhibit B.

24. Mr. Wesley has since been subject to multiple other periods of paid administrative leave pending investigations since the incident with Mr. Coreas, each lasting for a few months. The investigations have not resulted in findings of serious misconduct.

25. For example, in April 2017, Mr. Wesley was placed on administrative leave pending an investigation into allegations that he made a threat and used a racial slur toward another employee. After two (2) months on paid administrative leave, the investigation found that he had not made a threat or used a racial slur. He merely received a written warning for unprofessional conduct.

26. While on leave, Mr. Wesley received three (3) extension of leave letters in two (2) weeks from Mr. Sciarratta, who Mr. Wesley believed was not supposed to be in contact with him. The leave lasted for much longer than what he was initially told.

27. Upon Mr. Wesley's return, management refused to meet with him.

28. The Georgetown police still have a record of the threat allegation even though an investigation determined that no threat was made.

29. The periods of leave take a tremendous toll on Mr. Wesley, as he is uncertain about the security of his job, and receives very little communication from the administration.

30. Mr. Wesley never received complaints or punishment for the quality of his work. He was disciplined a few times for refusal of work while in Building Maintenance. He denies refusing work, as he only questioned why he was assigned certain work tickets.

31. Mr. Wesley was solely responsible for five (5) buildings, more than other maintenance employees. On one occasion, he received tickets for a building that was assigned to two (2) Hispanic employees that were at work that day, one of whom was discovered sleeping in a supply closet while Mr. Wesley was completing the ticket. Mr. Wesley questioned why he was given the assignment, and was provided with no explanation. He completed the tickets.

32. Since his transfer to the plumbing skill shop, Mr. Wesley has been supervised by Mr. Todd Murphy. Mr. Murphy is under the supervision of Mr. Sciarratta.

33. Mr. Wesley filed a complaint with the Office of Institutional Diversity, Equity, and Affirmative Action (IDEAA) against Mr. Murphy. The IDEAA ruled for Mr. Wesley.

34. Mr. Wesley recently saw his personnel file, which included write-ups that should have been removed in accordance with investigations, union protections, and Georgetown policy.

35. In September 2018, Mr. Wesley was written-up for missing work while attending an employment-dispute arbitration. Management was aware of the arbitration, but notes that they "were not fully aware that [Mr. Wesley] would be away from work the entire time."

36. Until 2014, Mr. Wesley loved going to work. He still loves his job. However, since 2014, he has been dealing with the extreme stress and anxiety caused by Mr. Sciarratta and Mr. Alvarez. He has been seeing a counselor to help him deal with the stress and anxiety.

### III. FIRST CAUSE OF ACTION
### Hostile Work Environment

37. Mr. Wesley adopts and incorporates by reference paragraphs 1 to 36.

38. In determining whether a hostile work environment claim exists, the court must consider all the circumstances, including the frequency and severity of discriminatory conduct.

39. For the last four (4) years, University Management has created an environment that disfavors black employees, and favors Hispanic employees by informing them about

overtime opportunities first, and exposing non-Hispanic employees to more strict discipline for the same or similar infractions.  As a result, Mr. Wesley has had fewer opportunities to earn additional income through overtime work, and he has constant anxiety and stress about whether he will be able to continue working at a job he loves and to provide for his family.

40.  Mr. Wesley has been singled out on many occasions for additional scrutiny and punishment despite his many years working at Georgetown, having a record with no complaints over the quality of work, and being respected within the University community at large.

41.  The write-ups that have remained in his file after they were supposed to be removed further adds to Mr. Wesley's anxiety about his employment, and his sense that management is seeking to find reasons to terminate him.

42.  These actions add up to a hostile work environment that Mr. Wesley has been subjected to because of his race and because of his engagement in protected activity.

### IV. SECOND CAUSE OF ACTION
### Retaliation

43.  Mr. Wesley adopts and incorporates by reference paragraphs 1 to 42.

44.  Mr. Wesley was subject to retaliation for engaging in protected activity when he was given administrative leave for a vocal altercation he had with a Hispanic employee, and the other employee was subject to no discipline.

45. This incident occurred exactly one month after Mr. Wesley filed a discrimination complaint.

## V. RELIEF REQUESTED

**WHEREFORE** Plaintiff Clarence Wesley requests judgment against Georgetown University as follows:

    A.    Compensatory damages in the amount to be determined at trial.

    B.    Reasonable attorney's fees and costs.

    C.    Such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all triable issues.

Respectfully submitted,

November 16, 2018    **KLIMASKI & ASSOCIATES, P.C.**

    */s/   James R. Klimaski*
James R. Klimaski, #243543

KLIMASKI & ASSOCIATES, P.C.
1717 N Street NW – Suite 2
Washington, DC  20036-2827
202-296-5600          Fax 202-296-5601
Klimaski@Klimaskilaw.com

**Counsel to Clarence Wesley**